The Honorable Jeremy Hutchinson State Representative #5 Mesquite Cove Little Rock, AR 72211
Dear Representative Hutchinson:
I am writing in response to your request for my opinion on the following question:
 Is there any constitutional infirmity in A.C.A. § 27-70-104(b), which provides that "if the federal excise tax [on motor fuel] is reduced in any amount, the amount of the reduction will continue to be collected as state highway user revenues"?
RESPONSE
In my opinion, this legislation is an unconstitutional delegation of power from one legislative body to another.
Section 27-70-104 of the Arkansas Code provides that if Congress extends to the state an option to collect the federal excise tax on motor fuel, that option will automatically be exercised. Section 27-70-104(b) provides that if this option is exercised, for each decrease by Congress of the federal excise tax, the Arkansas state highway tax will automatically increase by a corresponding amount. As a practical matter, then, assuming the option were exercised, this statute would vest in Congress the power to determine if, when and by how much an Arkansas tax will increase.[1] As discussed below, the General Assembly cannot thus shift to another body future decisions regarding taxation.
In Hall v. Tucker, 336 Ark. 112, 118, 983 S.W.2d 432 (1999), the Arkansas Supreme Court repeated the following familiar formulation: "Arkansas statutes are presumed constitutional, and the party attacking a statute has the burden of showing that the challenged statute clearly violates the Arkansas Constitution. See Boyd v. Weiss, supra [333 Ark. 684,931 S.W.2d 237 (1998)]; McCutchen v. Huckabee, 328 Ark. 202, 943 S.W.2d 225
(1997)."
At issue is whether the legislature, in enacting A.C.A. § 27-70-104(b), violated Ark. Const. art. XXIII, which provides in pertinent part:
 The State's ancient right of . . . taxation is herein fully and expressly conceded; and the General Assembly may delegate the taxation power, with the necessary restriction, to the State's subordinate political and municipal corporations to the extent of providing for their existence, maintenance and well being, but no further.
Also implicated are Ark. Const. amend. VII, which provides in pertinent part that "[t]he legislative power of the people of this State shall be vested in a General Assembly," and Ark. Const. art. IV, §§ 1 and 2, which establish the various branches of government and provide that each shall perform its own designated functions.
Answering your question will turn on determining whether Congress might be characterized as a delegee of the legislature and, if so, whether it is constitutionally permissible to allow Congress to impose a state tax on Arkansans by reducing in equal measure the federal excise tax on motor fuel.
It is clearly established that "although the General Assembly cannot delegate its power to make a law, it can make a law and prescribe the condition upon which it may become operative." Leathers v. Gulf RiceArkansas, Inc., 338 Ark. 425, 431, 994 S.W.2d 481 (1999); accord Swanbergv. Tart, 300 Ark. 304, 778 S.W.2d 931. A defender of the legislation at issue might describe Congress' reduction of the excise tax as merely a condition precedent to application of a tax increase properly imposed by the General Assembly. However, in my opinion this interpretation strains the principle just recited beyond its intended scope. It is instructive to consider the circumstances in which this principle has been invoked. For instance, in Swanberg, the Court approved legislation that conditioned a law approving Sunday racing in Hot Springs upon the voters' approval. 300 Ark. at 311. The Court explained its approval by referring to the much earlier case of Capps v. Judsonia Steprock RoadImprovement District, 154 Ark. 46, 242 S.W. 72 (1922):
 In Capps, the court espoused the rule that the General Assembly may make a law to delegate the power to determine some facts or state of things, upon which the law makes or intends to make its own action depend. The court amplified by stating the following:
 . . . it is plain that the statute does not amount to a delegation of the legislative power, but on the other hand the Legislature exercised its power by declaring what the law shall be when put into operation in a given locality by ascertainment of certain facts, i.e., the will of the majority in the given locality to be affected.
This formulation is echoed in Terrell v. Loomis, 218 Ark. 296, 299-300,235 S.W.2d 961 (1951):
 Appellant argues that 93 is unconstitutional as an unlawful delegation of legislative authority to the Commissioner of Revenues. The applicable rule is stated in State v. Davis, 178 Ark. 153, 10 S.W.2d 513, as follows:" While it is a doctrine of universal application that the functions of the Legislature must be exercised by it alone, and cannot be delegated, it is equally well settled that the Legislature may delegate to executive officers the power to determine certain facts, or the happening of a certain contingency, on which the operation of the statute is by its terms made to depend. 12 C.J. 846, and 6 R.C.L., paragraph 165, p. 164. This principle has been frequently recognized by this court. Harrington v. White, 131 Ark. 291, 199 S.W. 92; Howard v. State, 154 Ark. 430, 242 S.W. 818; and Summers v. Road Improvement District No. 16, 160 Ark. 371, 254 S.W. 696." See, also, Wiseman v. Phillips, 191 Ark. 63, 84 S.W.2d 91; 11 Am.Jur., Constitutional Law, 216; 16 C.J.S. Constitutional Law, 138(a); Cooley's Constitutional Limitations (8th Ed.) p. 227.
These formulations illustrate that the contingency upon which the General Assembly can condition a law is some yet to be determined but existing state of facts, such as the will of the electorate, not a future exercise of discretion by some entity other than the legislature itself. Hence inWeiss, for instance, the Court approved legislation as not involving an unlawful delegation of power "because the Act presented a complete plan of what the tax status in Texarkana would be, if the people approve it."333 Ark. at 689.
My predecessors have twice addressed issues that illustrate the constitutional infirmity in the legislation that prompted your request. In the attached Ark. Op. Att'y Gen. No. 95-008, this office opined that it violated the separation-of-powers doctrine set forth in Ark. Const. art. 4, §§ 1 and 2, for the legislature to adopt by reference future editions of the Standard Building Code:
 It is generally stated, pursuant to this doctrine, that the legislature may confer discretion in the administration of the law. It may not, however, delegate the exercise of its discretion as to what the law shall be. 16 C.J.S. Constitutional Law § 137 (1984).
Similarly, in the attached Ark. Op. Att'y Gen. No. 88-332, this office opined that it would offend the separation-of-powers doctrine for the legislature to adopt prospectively Federal Adjusted Gross Income figures as the starting point for imposing a "single business tax." Any such legislation would be unconstitutional because it would delegate to the federal government the power to make Arkansas state tax determinations. For the same reason, the Supreme Court deemed it impermissible to determine corporate taxable income using the Interstate Commerce Commission's standard classification of accounts:
 This cannot be done since it in effect surrenders to a federal agency the responsibility of determining for Arkansas the "net income" of appellee. This is a fluid formula since the standard varies as the Interstate Commerce Commission sees fit to make changes for its rate-making purposes. Thus, appellee's tax liability to Arkansas is based upon a formula subject to prospective federal legislation or administrative rules. It is unconstitutional. Crowly v. Thornbrough, 226 Ark. 768, 294 S.W.2d 62. There we disapproved a statute which provided that minimum wages to be paid must be predicated upon the minimum wages determined by the Secretary of Labor of the United States.
Cheney v. St. Louis Southwestern Railway Co., 239 Ark. 870, 872,394 S.W.2d 731 (1965). As further illustrated in Crowly, the constitution absolutely prohibits the legislature from empowering any body other than itself to make future determinations that will affect the substance of a law:
 "The Act fails to establish a standard or formula by which a wage scale may be formulated; but rather delegates to the Secretary of Labor of the United States the right to fix the minimum wage scale to be paid in a particular area of this State. The State retains no control over the Secretary of Labor of the United States, therefore the Act violates Article 4, Sections 1, 2 and Amendment 7 to our State Constitution."
226 Ark. at 774; accord Bland v. Mahan, 245 Ark. 450, 452, 432 S.W.2d 827
(1968); Cottrell v. Faubus, 233 Ark. 721, 731, 347 S.W.2d 52 (1961). Section 27-70-104(b) of the Code in effect delegates to Congress the power to set Arkansas taxes through "federal legislation" based on a "fluid formula" beyond the legislature's control, which is precisely what the Court disapproved in Cheney. The Court in Cheney bluntly declared that the constitution forbids the General Assembly to enact any statute whereby "tax liability to Arkansas is based upon a formula subject to prospective federal legislation." 239 Ark. at 872. The quoted language perfectly describes A.C.A. § 27-70-104(b), which I must consequently conclude is unconstitutional.
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP/JHD:cyh
[1] Although it does not bear on the constitutional issue, I should note that Congress has never extended the option that would trigger this statute's application. For the moment, then, the ensuing discussion is academic.